**TEXAS STATE EMPLOYEES UNION,**
**et al., Petitioners,**

v.

**TEXAS DEPARTMENT OF MENTAL**
**HEALTH AND MENTAL**
**RETARDATION, et al., Respondents.**

No. C–5384.

Supreme Court of Texas.

Oct. 28, 1987.

Rehearing Denied March 30, 1988.

---

James C. Harrington, American Civil Liberties, Austin, for petitioners.

Jim Mattox, Atty. Gen., Lou Bright, Asst. Atty. Gen., Austin, for respondents.

## OPINION

HILL, Chief Justice.

The Texas State Employees Union (the Union) and several of its individual members sued the Texas Department of Mental Health and Mental Retardation (the Department) and its administrators seeking to invalidate the Department's mandatory polygraph policy. The district court found that the policy violated the Department's employees' common law rights of privacy and enjoined the Department from enforcing the policy. The trial court also rendered judgment that the Department was not liable for the Union's costs or attorney's fees under the declaratory judgment statute. TEX.CIV.PRAC. & REM.CODE ANN. § 37.009 (Vernon 1986).

The court of appeals agreed that the Department's rules, as written, violated the employees' common law privacy rights. However, the appeals court implied certain procedural protections into the rules in order to sustain their validity. 708 S.W.2d 498. The court of appeals did not decide the Department's liability for the Union's costs and attorneys' fees. Based upon our holding that the Department's polygraph policies violate privacy rights protected by the Texas Constitution, we reverse the judgment of the court of appeals, and allow attorneys' fees and costs.

In September 1983, the Department instituted a mandatory polygraph policy. Under the policy, employees were subject to "adverse personnel action" if they refused to submit to a polygraph examination during the course of an investigation of suspected patient abuse, theft or other criminal activity on the Department's facilities, or an activity posing a threat to the health or safety of patients or employees. After the Union filed this lawsuit, the Department promulgated Rule 302.05.03.048. That rule set out the conditions under which an employee could be dismissed for failure to take a polygraph examination and governed the use of polygraph results in grievance procedures.[1]

There was considerable testimony at trial regarding the nature of polygraph testing. The polygraph purports to detect deception by measuring an individual's physiological responses to questions asked by the polygraph examiner. In theory, the responses reflect the amount of anxiety the subject's answer causes. Examiners typically ask "control questions" which are calculated to cause a subject to lie so as to provide the examiner with an example of the subject's response when engaged in deception. The individual's responses to questions relevant to the incident under investigation are then compared to the responses to the control questions. Control questions are not job-related and ordinarily require the disclosure of matters personal to the employee. For example, Department employees testified that they had been asked such questions as: "Do members of your family smoke dope?" "Have you stolen anything in your life or in the last ten years?" "Have you beaten your kids?" The parties' experts generally agreed that control questions are necessary for effective and reliable polygraph testing. This was supported by the findings of the trial court.

The Union raises two principal objections to the Department's policy. First, the Un-

1. The rule provides that an employee can be dismissed for not submitting to a polygraph examination only if there is reasonable cause to believe: (1) that an incident of patient abuse or illegal on-campus activity has occurred; (2) that an employee violated departmental rules in connection with the incident; and (3) other reasonable investigatory alternatives have been exhausted including, at a minimum, an interview with the employee. All polygraph examination questions must be "specifically, narrowly and directly related to the employees [sic] performance of his official duties in connection with the specific incident or necessary for the proper administration of the polygraph exam." Unless the employee agrees otherwise, the rule provides that he cannot be questioned about his religious beliefs, beliefs regarding racial matters, political beliefs and associations (including union activities), involvement in specific crimes unrelated to the incident under investigation, and sexual practices unrelated to the incident under investigation. Neither the fact that the employee participated in a polygraph nor the test results of an examination are admissible in a departmental grievance hearing. The fact that an employee declined to participate in a polygraph is admissible in a grievance proceeding arising out of the employee's failure to undergo a polygraph examination.

ion alleges that mandatory polygraphs are never permissible under Texas law and that the results of a polygraph can never form the basis of an adverse employment action. Alternatively, the Union argues that even if it is permissible to ask questions "specifically, narrowly and directly" related to an employee's job performance, the Department must first show an important need for the test. Even then, the Union asserts, control questions are never permissible.

■■■■ We decide this case pursuant to the Texas Constitution. While the Texas Constitution contains no express guarantee of a right of privacy, it contains several provisions similar to those in the United States Constitution that have been recognized as implicitly creating protected "zones of privacy." *Cf. Roe v. Wade*, 410 U.S. 113, 152, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1972). Section 19 of the Texas Bill of Rights protects against arbitrary deprivation of life and liberty. TEX.CONST., art. 1, § 19. Section 8 provides the freedom to "speak, write or publish", and section 10 protects the right of an accused not to be compelled to give evidence against himself. TEX.CONST., art. 1, §§ 8, 10. Sections 9 and 25 guarantee the sanctity of the individual's home and person against unreasonable intrusion. TEX.CONST., art. 1, §§ 9, 25. Finally, the Texas Constitution protects the rights of conscience in matters of religion. TEX.CONST., art. 1, § 6. Each of these provisions gives rise to a concomitant zone of privacy. *Cf. Griswold v. Connecticut*, 381 U.S. 479, 484, 85 S.Ct. 1678, 1681, 14 L.Ed.2d 510 (1965). We do not doubt, therefore, that a right of individual privacy is implicit among those "general, great, and essential principles of liberty and free government" established by the Texas Bill of Rights. TEX.CONST., art. I, Introduction to the Bill of Rights. We hold that the Texas Constitution protects personal privacy from unreasonable intrusion. This right to privacy should yield only when the government can demonstrate that an intrusion is reasonably warranted for the achievement of a compelling govern-

mental objective that can be achieved by no less intrusive, more reasonable means.

■■■■ To evaluate the Department's polygraph policy, we must determine what interests the Department asserts and whether those interests are compelling enough to override the privacy interests of the employees. A state may have interests as an employer in regulating the conduct of its employees that differ significantly from those it possesses in connection with its regulation of the public generally. These interests, however, are merely factors that must be weighed in balancing the interests of the state with the privacy of the individual and the intrusiveness and reasonableness of the contested invasion. Such factors will be more compelling to the extent that they go beyond mere employee-employer relations to touch upon matters more closely related to the vital functions of the state, for example, the promotion of the safety of the general public.

Three previous Texas cases have addressed the right of public employees to refuse to submit to a polygraph test. *Firemen's and Policemen's Civil Service Comm. v. Burnham*, 715 S.W.2d 809 (Tex. App.—Austin 1986, writ pending): *Richardson v. City of Pasadena*, 500 S.W.2d 175 (Tex.Civ.App.—Houston [14th Dist.] 1973), *rev'd on other grounds*, 513 S.W.2d 1 (Tex.1974); *Talent v. City of Abilene*, 508 S.W.2d 592, (Tex.1974). None of these involved an express privacy challenge.

As justification for its polygraph policy, the Department asserts its interest in maintaining a safe environment for Department patients. This interest is in many respects compelling. The Department is not concerned solely with the smooth operation of its agency. It has been charged by the legislature with a unique responsibility towards its patients. It must provide them with a "humane environment that affords reasonable protection from harm" without undue limitation on their "rights, benefits, responsibilities and privileges guaranteed by the constitution and laws." TEX.REV. CIV.STAT.ANN., art. 5547–80(a), (b)5.[2] In

---

2. The Department is responsible for administration of eight state hospitals, thirteen state schools, over 2500 employees and an average patient population of approximately 14,000.

its effort to achieve these goals, the Department must minimize incidents of employee misconduct. The polygraph testing was initiated to assist administrators in investigations of four types of situations: patient abuse or neglect; conduct endangering the health or safety of patients or other employees; theft or other criminal activity; use of drugs or alcohol.

These goals are admittedly important. They must be viewed, however, in light of the standard we have established. Factual determinations as to the nature of the state's objective and the reasonableness of the means used to achieve it are properly made by the trial court. In this case, the trial court found that the Department's polygraph policy was not justified by the public interest. It found that the Department serves a different function and stands in a different posture in regard to the public as compared with a police department and that the unquestioning obedience required of police officers and members of other quasi-military organizations is not required of Department employees. Texas courts have shown deference to the important interests served by public agencies that are directly involved in the compelling state goal of protecting the safety of the general public. *See Richardson v. City of Pasadena*, 500 S.W.2d 175, 177 (Tex.Civ. App.—Houston [14th Dist.] 1973), *rev'd on other grounds*, 513 S.W.2d 592 (Tex.1974). The trial court found, however, that the unique circumstances that may justify requiring police and fire personnel to take polygraph examinations do not exist with respect to the Department's employees. We agree. The Department's objectives, important as they are, are not adequately compelling to warrant an intrusion into the privacy rights of the employees.

The polygraph policy itself undoubtedly implicates the privacy rights of the employees. The trial court found that "[The De-partment's] polygraph's intrusion is highly offensive to a regular person." Further, the trial court found that in light of its unreliability,[3] a polygraph test was not a reasonable means of identifying miscreant employees.

We do not doubt that the Department is entitled to require employees to answer questions that are narrowly and specifically related to the performance of their job duties. The use of a lie detector, however, presents a qualitatively different question. The Department's asserted interests are inadequate to overcome the privacy interests impinged upon by the polygraph testing. We hold that the Department's polygraph policies impermissibly violate privacy rights protected by the Texas Constitution.

We reverse the Court of Appeals and uphold the trial court's ruling holding the policy unenforceable and enjoining the Department from taking disciplinary action against any employee for refusing to take the polygraph examination.

## OTHER CONSTITUTIONAL ISSUES

In addition to a privacy argument, the Union argues that the polygraph testing violates the employees' constitutional right against self-incrimination and denies them due course of law under the Texas Constitution. The court of appeals sought to address some of these due course concerns by implying certain procedural safeguards into the Department's regulations. 708 S.W.2d 514.

Because we hold that the polygraph policy impermissibly violates the privacy rights of Department employees, we do not now reach the question of what procedural safeguards would be necessary in a case where polygraph testing was not found impermissible. Neither do we find it necessary to

---

**3.** The polygraph machine does not itself detect deception. Rather, the polygraph examiner must interpret the test results to assess the test subject's veracity. The parties' expert witnesses presented widely varying estimates of the reliability of those assessments. The Union's expert testified that at least one study showed a "false positive" rate of 49–51 percent. A false positive occurs when the examiner concludes that a test subject is lying who is in fact telling the truth. The questionable reliability of polygraph testing has led the Court of Criminal Appeals to prohibit the admission of polygraph results in criminal trials, even where the defendant has stipulated to their admission. *Romero v. State*, 493 S.W. 2d 206 (Tex.Crim.App.1973).

address those issues relevant to the right against self-incrimination.

## ATTORNEYS' FEES

█ The Union argues that it is entitled to recover its attorney's fees and costs from the Department. The Department contends in response that the sovereign immunity of the state shields it from liability for any of the Union's attorney's fees or costs. The trial court denied attorney's fees to the Union on the grounds they were barred by the State's sovereign immunity. The trial court found, however, that if sovereign immunity did not bar payment, the Department was liable for $18,000 in attorney's fees and $800 in costs. The court of appeals reserved the matter until a final disposition of the appeal.

The Legislature has provided express statutory authority for payment of court costs and attorney's fees in actions arising from the unconstitutional conduct of state officials. TEX.CIV.PRAC. & REM.CODE § 104.001 (Vernon 1986). Section 104 provides:

§ 104.001. State Liability: Persons Covered

[T]he state is liable for actual damages, court costs, and attorney's fees adjudged against:

(1) an employee, a member of the governing board, or any other officer of a state agency ...:

104.002. State Liability; Conduct Covered

The state is liable under this chapter only if the damages are based on an act or omission by the person in the course and scope of the person's office, employment, or contractual performance for or service on behalf of the agency, institution, or department and if:

(2) the damages arise out of a cause of action for deprivation of a right, privilege, or immunity secured by the constitution or laws of this state or the United States, except when the court in its judgment or the jury in its verdict finds the person acted in bad faith.

In this case the trial court enjoined Department officers Gary E. Miller and W. Kent Johnson from further use of the polygraph policy and from taking disciplinary action against employees for refusal to submit to polygraph testing. The trial court also granted a declaratory judgment that the polygraph policy was unenforceable.

We hold that such a judgment can be the basis for invoking the attorney's fees provision of Section 104. We therefore uphold the trial court's finding granting the Union $18,000 in attorney's fees and $800 in costs and hold that the trial court erred in finding that the state was immune from liability for such costs.

## CONCLUSION

We reverse the judgment of the court of appeals. We affirm that part of the trial court's judgment invalidating the Department's polygraph policies and enjoining their enforcement. We reverse the portion of the trial court's judgment denying the Union's recovery of costs and attorney's fees and render judgment that the Union recover $18,000 in attorney's fees and $800 in costs.