OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS
JOHN CORNYN

July 6, 1999

Mr. Frank DiTucci
Executive Officer
Texas Polygraph Examiners Board
P.O. Box 4087
Austin, Texas 78773-0001

Opinion No. JC-0070

Re: Whether a polygraph examiner who in the course of an examination learns that a child has been abused or neglected must report that information to the appropriate authorities, and related questions (RQ-923)

Dear Mr. DiTucci:

Section 19A of the Polygraph Examiners Act, article 4413(29cc) of the Revised Civil Statutes,[1] forbids a licensed polygraph examiner to disclose, except in limited circumstances, information gained from a polygraph examination. On the other hand, section 261.101(a) of the Family Code requires a person who believes that a child has been abused or neglected immediately to report the information to the appropriate authorities. Where a polygraph examiner learns during the course of a polygraph examination that a child has been abused or neglected, you ask whether the examiner must keep the information confidential in compliance with section 19A of the Polygraph Examiners Act or must report the information in accordance with section 261.101(a) of the Family Code. We believe that section 261.101 of the Family Code prevails and, accordingly, that the polygraph examiner must report the information.

You explain that your question arises in the context of sex-offender treatment programs many state courts mandate as part of a convicted offender's rehabilitation, presumably while the offender is on parole or under mandatory supervision. We do not understand you to ask about polygraph examinations that may occur while the offender is imprisoned. Your letter indicates that a court-ordered treatment program normally consists of three phases:

Phase I: The offender admits and accepts responsibility for the actions of the offense he or she has been charged with. It's known as "breaking denial."

---

[1]Effective September 1, 1999, article 4413(29cc) of the Revised Civil Statutes will be repealed and codified as chapter 1703 of the Occupations Code. *See* Act of May 10, 1999, 76th Leg., R.S., H.B. 3155, § 1, secs. 1703.001-.403.

> Phase II: The offender comes to terms with his or her past. Other assaults, in addition to those for which he or she is currently receiving treatment, are discussed, and prior, unknown victims are revealed. Finally, the offender's sexual deviance is explored. This phase, known as "sexual history," is important because it is used to direct treatment.

> Phase III: The offender is monitored to insure there are no new victims and to hold in check any thinking errors. This phase is known as "monitoring."

Letter from Frank DiTucci, Executive Officer, Texas Polygraph Examiners Board, to Sarah J. Shirley, Office of the Texas Attorney General (Oct. 31, 1996) (on file with Opinion Committee) [hereinafter "Request Letter"].

You continue to explain that an offender does not progress with his or her treatment unless he or she is willing to disclose all of his or her prior sexual history. If an offender fails to progress, his or her probation or parole is revoked. As you state, "[t]he offender appears to be faced with a dilemma: reveal one's prior sexual history in order to be considered making rehabilitative progress, but run the risk of being charged for earlier, but as yet undiscovered[,] sexual assaults." *Id.*

Your primary question appears to be motivated not by the offender's dilemma, but by the dilemma the polygraph examiner faces:   must he or she keep the information confidential, consistently with section 19A of the Polygraph Examiners Act, or must the examiner report the information, consistently with section 261.101 of the Family Code. In your view, these two statutes are inconsistent with each other, and a polygraph examiner cannot simultaneously comply with both. If section 261.101 of the Family Code prevails over article 4413(29cc), section 19A of the Revised Civil Statutes, you ask whether the polygraph examiner may satisfy the statutory obligation to report a suspicion of child abuse by informing the offender's local community supervision and corrections officer or parole officer. Finally, you ask about whether the examination may infringe upon the examinee's constitutional due-process rights.

## A. **Which statute controls:  article 4413(29cc) of the Revised Civil Statutes or section 261.101 of the Family Code?**

We begin by analyzing the statutes at issue. The Polygraph Examiners Act ("the Act"), TEX. REV. CIV. STAT. ANN. art. 4413(29cc) (Vernon 1976 & Supp. 1999), purports to regulate all persons who profess to "detect deception or . . . verify truth of statements" using instruments such as lie detectors, polygraphs, or deceptographs. *Id.* § 2 (Vernon 1976); *see Texas State Employees Union v. Texas Dep't of Mental Health & Mental Retardation*, 746 S.W.2d 203, 204 (Tex. 1987) (describing the nature of polygraph testing). With certain limited exceptions, information acquired from a polygraph examination is confidential:

(a) Except as provided by Subsection (c) of this section, a licensed polygraph examiner, licensed trainee, or employee of a licensed polygraph examiner may not disclose to another person information acquired from a polygraph examination.

(b) Except as provided by Subsection (d) of this section, a person for whom a polygraph examination is conducted or an employee of the person may not disclose to another person information acquired from the examination.

(c) A licensed polygraph examiner, licensed trainee, or employee of a licensed polygraph examiner may disclose information acquired from a polygraph examination to:

(1) the examinee or any other person specifically designated in writing by the examinee;

(2) the person, firm, corporation, partnership, business entity, or governmental agency that requested the examination;

(3) members or their agents of governmental agencies such as federal, state, county, or municipal agencies that license, supervise, or control the activities of polygraph examiners;

(4) other polygraph examiners in private consultation, all of whom will adhere to this section; or

(5) others as may be required by due process of law.

(d) A person for whom a polygraph examination is conducted or an employee of the person may disclose information acquired from the examination to a person described by Subdivisions (1) through (5) of Subsection (c) of this section.

(e) The board or any other governmental agency that acquires information from a polygraph examination under Subdivision (3) of Subsection (c) of this section shall keep the information confidential.

TEX. REV. CIV. STAT. ANN. art. 4413(29cc), § 19A (Vernon Supp. 1999). Any person who intentionally, knowingly, recklessly, or with criminal negligence violates section 19A commits a Class B misdemeanor. *Id.* § 26.

The other section about which you ask, section 261.101 of the Family Code, requires all persons, without exception, who believe that a child has been abused or neglected to report that suspicion to the appropriate authorities:

> (a) A person having cause to believe that a child's physical or mental health or welfare has been adversely affected by abuse or neglect by any person shall immediately make a report as provided by this subchapter.
>
> . . . .
>
> (c) The requirement to report under this section applies without exception to an individual whose personal communications may otherwise be privileged, including an attorney, a member of the clergy, a medical practitioner, a social worker, a mental health professional, and an employee of a clinic or health care facility that provides reproductive services.
>
> . . . .

TEX. FAM. CODE ANN. § 261.101(a), (c) (Vernon Supp. 1999); *see id.* 261.001(1), (4), (6) (Vernon 1996 & Supp. 1999) (defining "abuse," "neglect," and "report"); *cf.* Tex. Att'y Gen. Op. No. H-986 (1977) at 2 (determining that Family Code section 34.01, now section 261.101(a), requires a person who suspects that a child has been or may be sexually abused to report that suspicion). The report, which should reflect the reporter's belief that a child has been or may be abused or neglected, *see* TEX. FAM. CODE ANN. § 261.102 (Vernon 1996); *see also id.* §§ 261.001(6) (defining "report"), .104 (listing contents of report), must be made to one of the entities listed in section 261.103:

> (1) any local or state law enforcement agency;
>
> (2) the [Department of Protective and Regulatory Services] if the alleged or suspected abuse involves a person responsible for the care, custody, or welfare of the child;
>
> (3) the state agency that operates, licenses, certifies, or registers the facility in which the alleged abuse or neglect occurred; or
>
> (4) the agency designated by the court to be responsible for the protection of children.

*Id.* § 261.103; *see id.* § 261.001(2) (defining "department"). A knowing failure to report a suspicion of child abuse or neglect in accordance with chapter 261 of the Family Code is a class B misdemeanor. *See id.* § 261.109.

We agree with you that a polygraph examiner cannot comply with both the confidentiality provision in the Polygraph Examiners Act and the disclosure provision in the Family Code. Either the polygraph examiner must keep the information confidential under article 4413(29cc) of the Revised Civil Statutes or the polygraph examiner must disclose the information to the proper authorities under section 261.101 of the Family Code. A polygraph examiner cannot do both. And, if a polygraph examiner chooses to keep the information confidential under article 4413(29cc), section 19A of the Revised Civil Statutes, he or she may be criminally responsible for knowingly failing to report the suspicion under section 261.109 of the Family Code. Conversely, a polygraph examiner who chooses to report his or her suspicion under chapter 261 of the Family Code may be criminally responsible under article 4413(29cc), section 26 of the Revised Civil Statutes for failing to keep the information confidential. We must, therefore, consider which provision prevails.[2]

Generally, where a general statute conflicts irreconcilably with a special statute, we must construe the special statute as an exception to the general provision, unless the general provision was enacted later and the legislature manifestly intended the general provision to prevail. *See* TEX. GOV'T CODE ANN. § 311.026 (Vernon 1998); 2 NORMAN J. SINGER, STATUTES AND STATUTORY CONSTRUCTION § 40.02, at 191 (5th ed. 1993). But it is unclear here which statute is the more general and which the more specific. For example, the Polygraph Examiners Act's confidentiality provision might be viewed as a special statute pertaining only to polygraph examiners that we should construe as an exception to the general directive that all persons report suspicions of child abuse. On the other hand, the Family Code's reporting requirement might be construed to specially except child-abuse information from the provision granting confidentiality generally to information gained in the course of a polygraph examination. Consequently, we must look further to determine which provision the legislature intended to prevail.

We believe that the legislature intended section 261.101 of the Family Code to prevail over any inconsistent statute, which includes section 19A of the Polygraph Examiners Act, unless the inconsistent statute explicitly recognizes and excepts itself from section 261.101. The legislature added section 19A to the Polygraph Examiners Act in 1981 as a result of the sunset review process. *See* Act of May 27, 1981, 67th Leg., R.S., ch. 768, § 4, sec. 19A, 1981 Tex. Gen. Laws 2867, 2872; HOUSE COMM. ON GOV'T ORGANIZATION, BILL ANALYSIS, Tex. Comm. Substitute S.B. 441, 67th

---

[2]An examinee may, of course, specifically designate in writing any of the entities listed in Family Code section 261.103 as entities to which the examiner may disclose information received in the examination, *see* TEX. REV. CIV. STAT. ANN. art. 4413(29cc), § 19A(c)(1) (Vernon Supp. 1999), but for purposes of this opinion, we assume the examinee has not.

Leg., R.S. (1981); Sunset Advisory Commission, Final Report to the Governor of Texas and Members of the Sixty-seventh Texas Legislature 153 (Dec. 1980) [hereinafter "Final Report"]; Sunset Advisory Commission, Legislative Proposals 532 (Dec. 1980) [hereinafter "Legislative Proposals"]. We understand that at that time the use of polygraph examinations was shifting at a dramatically increasing rate from criminal prosecutions to attempts to reduce loss from employee theft in industrial and commercial settings. *See* Final Report, *supra*, at 153-54. To minimize problems generally associated with polygraph examinations, "such as invasion of privacy," the Sunset Commission proposed, and the legislature ultimately adopted, a statute forbidding a polygraph examiner to release information received in a polygraph examination except in those limited circumstances described statutorily. *Id.* at 154; *see also* Legislative Proposals, *supra*, at 533. Ostensibly, the legislature did not contemplate the use of polygraph examinations in sex-offender treatment programs.

When the legislature originally enacted the substance of section 261.101 in 1971, it described its purpose: "to protect children . . . by providing for the *mandatory* reporting of suspected cases." Act of May 24, 1971, 62d Leg., R.S., ch. 902, § 1, sec. 1, 1971 Tex. Gen. Laws 2790 (emphasis added). The legislature further intended that the state's protective services would "prevent further abuses, and . . . safeguard and enhance the welfare of these children." *Id.* Finally, the legislature directed that the statutes be administered and interpreted to provide "the greatest possible protection as promptly as possible" for the children who are affected by abuse or neglect. *Id.*

In our opinion, the legislature deemed the protection of children more important than any other interest not explicitly protected from section 261.101's reach. Section 261.101(a) therefore *orders* any person who has reason to suspect that a child has been abused or neglected *immediately* to report the information. *See* Tex. Att'y Gen. Op. Nos. DM-458 (1997) at 2 (stating that term "'immediately' underscores the . . . sense of urgency"); H-986 (1977) at 4 (defining "any person"). Subsection (c) declares that the report requirement applies *without exception* and regardless of the application of a privilege, *e.g.*, attorney-client or priest-penitent. TEX. FAM. CODE ANN. § 261.101(c) (Vernon Supp. 1999); *see also* Tex. Att'y Gen. Op. No. DM-458 (1997) at 3 (opining that chapter 261 of Family Code confers no discretion upon person who suspects that child has been abused).

Our interpretation of section 261.101 of the Family Code comports with the Texas Court of Appeals' interpretation of the statute. In *Albright v. Texas Department of Human Services*, 859 S.W.2d 575 (Tex. App.–Houston [1st Dist.] 1993, no writ), the court stated that, under the Family Code, the protection of the child is paramount "in instances of suspected child abuse." *Id.* at 580. The court further stated that the Family Code provisions regarding mandatory reporting of suspected child abuse, among other provisions, indicate that preventing child abuse is a high priority in this state and "demonstrate the public commitment to" promoting children's welfare. *Id.*

Finally, our conclusion is consistent with what we perceive as a legislative intent to collect federal funds under 42 U.S.C. § 5106a. The legislature apparently enacted the substance of section 261.101 partly to comply with a federal directive. *See* Antoinette M. Pollock, *Recent Amendments to the Texas Child Abuse Statutes: An Analysis and Recommendation*, 11 ST. MARY'S L.J. 914, 932 (1979). Under 42 U.S.C. § 5106a(a), the Secretary of Health and Human Services, through the Office on Child Abuse and Neglect, *see* 42 U.S.C. § 5101(a) (1994 & Supp. II 1996), financially may assist a state in improving its child protective service system. *Id.* § 5106a(a). A state's eligibility for the grant is contingent upon, in part, whether the state has "in effect . . . a State law . . . [providing] for the reporting of known and suspected instances of child abuse and neglect." *Id.* § 5106a(b)(2)(A)(i).

For all of these reasons, we conclude that section 261.101(a) of the Family Code prevails over any inconsistent statute unless the legislature has expressly excepted the inconsistent statute from the reach of section 261.101. Because the legislature has not expressly excepted information acquired in a polygraph examination or polygraph examiners from the requirement of section 261.101, section 261.101 must prevail over section 19A of the Polygraph Examiners Act. Consequently, a polygraph examiner immediately must report his or her suspicion that a child has been abused.

## B. To whom must a polygraph examiner report the information?

We turn now to your second question: to whom must the polygraph examiner report the information? As a preliminary matter, the fact that a polygraph examiner may report suspicions of child abuse to the examinee's supervisory officer under section 19A of the Polygraph Examiners Act does not relieve the polygraph examiner of the duty to report under section 261.101(a) of the Family Code, which requires the examiner to "make a report as provided by this subchapter." TEX. FAM. CODE ANN. § 261.101(a) (Vernon Supp. 1999). Section 19A(c)(2) of the Polygraph Examiners Act, which permits a polygraph examiner to disclose information acquired from an examination to "the person . . . or governmental agency that requested the examination," authorizes a polygraph examiner to disclose the information to the examinee's local community supervision and corrections officer or parole officer, but does not require that the examiner do so. TEX. REV. CIV. STAT. ANN. art. 4413(29cc), § 19A(c)(2) (Vernon Supp. 1999). We do not address in this opinion whether a local community supervision and corrections officer or a parole officer has a duty to report a suspicion of child abuse under section 261.101 of the Family Code once a polygraph examiner has disclosed the information to the officer. In any event, section 261.101(b) prohibits a professional from not reporting his or her suspicion because the professional thinks someone else will make the report.

In our view, a report to the local community supervision and corrections officer or parole officer is not "a report as provided by [chapter 261, subchapter B of the Family Code]." *See* TEX. FAM. CODE ANN. § 261.101(a) (Vernon Supp. 1999). A polygraph examiner must, under chapter 261, subchapter B of the Family Code, report suspected child abuse to a person listed in section

261.103. Relevant to the polygraph examiner's situation, the examiner has two possible alternatives: either a state or local law-enforcement agency or "the agency designated by the court to be responsible for the protection of children."[3]  *Id.* § 261.103 (Vernon 1996). As a matter of law, a local community supervision and corrections officer or a parole officer is neither a law-enforcement agency nor an agency designated by a court to be responsible for the protection of children.

To determine whether a local community supervision and corrections officer or a parole officer is a local or state law enforcement agency, we must first ascertain what the legislature meant by the phrase "local or state law enforcement agency." Chapter 261 of the Family Code does not provide a definition. The phrase is defined in two provisions of the Code of Criminal Procedure, however. Chapter 59, pertaining to the forfeiture of contraband, defines "law enforcement agency" to mean "an agency of the state or . . . of a political subdivision . . . authorized by law to employ peace officers." TEX. CODE CRIM. PROC. ANN. art. 59.01(5) (Vernon Supp. 1999); *see id.* art. 2.12 (defining "peace officers"). Similarly, chapter 62, pertaining to missing children and missing persons, defines the term to mean "a police department of a city in this state, a sheriff of a county in this state, or the Department of Public Safety." *Id.* art. 62.001(8); *cf. id.* art. 62.01(2) (defining "local law enforcement authority" as chief of municipal police or county sheriff). We think these substantially similar definitions embody the commonly understood meaning of the phrase "local or state law enforcement agency," and we therefore apply them here. *See* TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 1998) (directing that statutory phrases be read in context and construed according to common usage).

Neither a local community supervision and corrections officer or a parole officer is a member of a local or state law enforcement agency. First, peace officers are precluded from being appointed as community supervision officers. *See* TEX. GOV'T CODE ANN. § 76.005(c) (Vernon 1998); TEX. HUM. RES. CODE ANN. § 141.065 (Vernon 1990) (prohibiting peace officer from acting as probation officer); *see also* Tex. Att'y Gen. LO-96-091, at 1 (construing section 141.065, Human Resources Code, to preclude assistant juvenile probation officer from serving as constable). Likewise, a person serving as a peace officer may not be employed as a parole officer. *See* TEX. GOV'T CODE ANN. § 508.113(c), (d) (Vernon 1998). Thus, a community supervision and corrections officer or a parole officer cannot be a member of a law enforcement agency under article 59.01 of the Code of Criminal Procedure. Second, a local community supervision and corrections officer is an employee of the local community supervision and corrections department, which is established by the district judge or district judges trying criminal cases in a judicial district. *See* TEX. GOV'T CODE ANN. §§ 76.002, .004, .005 (Vernon 1998) (establishing community supervision and corrections departments and providing for staffing). Accordingly, a community supervision and corrections department is separate from a police or sheriff's department and is not a law enforcement agency for purposes of

---

[3]Family Code section 261.103(2) and (3) does not appear to apply generally to the situation in which a polygraph examiner finds him or herself. If either subsection (2) or (3) applies, however, a polygraph examiner must report the suspicion as those subsections require.

article 62.001(8) of the Code of Criminal Procedure. Similarly, a parole officer is an employee of the pardons and paroles division of the Texas Department of Criminal Justice, *see* TEX. GOV'T CODE ANN. §§ 508.001(7), .111(b), .113 (Vernon 1998), not of a municipal police department or a county sheriff's department. We are unaware of any other definition of the term that might lead us to a contrary conclusion.

We therefore consider whether a report to the local community supervision and corrections officer or parole officer is equivalent to a report to an agency designated to be responsible to protect children. You premise your suggestion on the fact that the Community Justice Assistance and Pardons and Paroles Divisions of the Texas Department of Criminal Justice have broad mandates to monitor offenders to protect society; protecting society, you believe, includes the children of that society.

We conclude that neither an officer of a local community supervision and corrections department nor a parole officer is an "agency designated by the court to be responsible for the protection of children." *See* TEX. FAM. CODE ANN. § 261.103 (Vernon 1996). We do not determine in this opinion what the legislature meant by specifying that a person report a suspicion of child abuse or neglect to an "agency designated by the court to be responsible for the protection of children." *See id.* We believe that the legislature intended by the quoted language to describe an agency that a court has particularly designated to be responsible for protecting children. *Cf. Vineyard v. Kraft*, 828 S.W.2d 248, 254 (Tex. App.–Houston [14th Dist.] 1992, writ denied) (stating that court-appointed health-care professionals evaluating child's best interest in connection with parents' divorce qualified as "agency designated by the court to be responsible for the protection of children"). But we are not aware that any court has ordered either of these officers, in any particular case, to be responsible for protecting children.

Furthermore, neither an officer of a local community supervision and corrections department nor a parole officer has within his or her statutory duties a responsibility for protecting *children*. We find, for instance, nothing that specifically directs a community supervision and corrections department officer to be responsible for protecting children, as section 261.103(4) of the Family Code requires. The statutory purpose of an officer of a local community supervision and corrections department is to ensure that a defendant who has been placed on community supervision under article 42.12 of the Code of Criminal Procedure complies with the conditions of the court's order, which conditions are "designed to protect or restore the community, protect or restore the victim, or punish, rehabilitate, or reform the defendant." TEX. CODE CRIM. PROC. ANN. art. 42.12, § 11(a) (Vernon Supp. 1999).

Similarly, we find nothing in the statutes governing the Pardons and Paroles Division of TDCJ specifically directing it to be responsible for protecting children. Indeed, the Pardons and Paroles Division's main responsibility centers on the felon, not on society. The duty of the Pardons and Paroles Division is to "supervise and reintegrate felons into society" after the felons are released

from confinement. TEX. GOV'T CODE ANN. § 493.005 (Vernon 1998). Under the Adult Parole and Mandatory Supervision Law, chapter 508 of the Government Code, a parole officer is responsible to ensure that the parolees and those released subject to mandatory supervision comply with the conditions of parole or mandatory supervision. *See id.* § 508.001(6), (7) (defining "parole" and "parole officer"); *see also* TEX. CODE CRIM. PROC. ANN. art. 42.12 §§ 2(2)-(3); 8 (Vernon Supp. 1999) (defining "community supervision" and "supervision officer" and describing which prisoners are eligible for community supervision).

Moreover, we believe the legislature intended to require that a report be made to an entity that could promptly investigate the report of suspected child abuse or neglect. Section 261.301 of the Family Code requires the Texas Department of Protective and Regulatory Services, *see also* 40 TEX. ADMIN. CODE § 700.505 (1998) (setting time frame for investigations by Department of Protective and Regulatory Services, Child Protective Services), or the "designated agency" to promptly and thoroughly investigate the report of child abuse or neglect, TEX. FAM. CODE ANN. § 261.301(a), (e) (Vernon 1996 & Supp. 1999); *see also* 40 TEX. ADMIN. CODE §§ 700.507 - .510 (1998) (outlining investigation procedure by Child Protective Services.). The investigating entity must determine:

> (1) the nature, extent, and cause of the abuse or neglect;
>
> (2) the identity of the person responsible for the abuse or neglect;
>
> (3) the names and conditions of the other children in the home;
>
> (4) an evaluation of the parents or persons responsible for the care of the child;
>
> (5) the adequacy of the home environment;
>
> (6) the relationship of the child to the persons responsible for the care, custody, or welfare of the child; and
>
> (7) all other pertinent data.

TEX. FAM. CODE ANN. § 261.301(e) (Vernon 1996). The investigating entity, whether it is the Department of Protective and Regulatory Services or the "designated agency," also may file an application for a temporary restraining order to prevent a child from being removed from the state in certain circumstances. *Id.* § 261.306(a) (Vernon 1996); *see also* 40 TEX. ADMIN. CODE §§ 700.510, .515 (1998) (setting forth conditions necessitating immediate or short term protection). Finally, all investigators must comply with annual professional training standards set by the Texas Department of Protective and Regulatory Services. TEX. FAM. CODE ANN. § 261.310(b) (Vernon

1996); *see also* 40 TEX. ADMIN. CODE § 700.519 (1998) (setting forth voluntary standards for investigators). Neither an officer of the local community supervision and corrections department nor a parole officer is authorized, equipped, or trained to conduct the required investigation or to prevent a child from being removed from the state if necessary.

We accordingly conclude that a polygraph examiner must, consistently with Family Code section 261.103, report a suspicion of child abuse or neglect to either a law enforcement agency or the agency specifically designated by the court to be responsible to protect children. Unless a court has explicitly ordered that an officer of the local community supervision and corrections department or a parole office is responsible to protect children, the designated agency is not either of those officers.

## C. Does a polygraph examination in this context deny the examinee's constitutional rights?

You next ask whether a polygraph examiner denies the examinee's due-process rights "when conducting a polygraph examination at the request of an attorney, or . . . a non-attorney." Request Letter, *supra*, at 4. We must answer your question in general terms because it literally covers any polygraph examination given for any purpose. We are unable to address all conceivable fact situations. We thus limit our discussion to what we understand to be your central concern: An examinee who is without legal counsel during the examination and who reveals previously undiscovered incidents of child abuse or neglect may be denied due-process protection with respect to those undiscovered incidents if the polygraph examiner reports them. You also are concerned that an examinee who reveals previously undiscovered incidents in the belief that the information would be used only in connection with the crime for which the examinee has been convicted may be entitled to additional protection regarding the undiscovered incidents. Because we believe the legal principles we discuss apply to convicted offenders who are placed on community supervision the same as to parolees, we do not distinguish between the two in the following discussion. *See Davis v. State*, 757 S.W.2d 386, 389 (Tex. App.–Dallas 1988, no writ) (stating that both probation and parole are the means by which a defendant may escape part of the punishment imposed by law). Additionally, as we have suggested, we do not consider here the rights of inmates because we have been informed that they are not at issue.

We assume for purposes of this opinion that a polygraph examination given in the course of a court-ordered treatment program is a state action. Constitutional due-process guarantees, whether under the federal or the state constitution, impose obligations only upon "state actors." *See Republican Party of Tex. v. Dietz*, 940 S.W.2d 86, 88-91 (Tex. 1997). Whether the state is sufficiently involved in a particular case requires the resolution of fact questions that cannot be determined in the opinion process. *See id.* at 91; *see also, e.g.*, Tex. Att'y Gen. Op. Nos. DM-98 (1992) at 3; H-56 (1973) at 3; M-187 (1968) at 3; O-2911 (1940) at 2.

The Fourteenth Amendment to the United States Constitution and article I, section 19 of the Texas Constitution require the state to provide due process of law. Because Texas courts traditionally have interpreted the due-process requirement of article I, section 19 to be coextensive with due-process requirements under the federal constitution, *see University of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 929 (Tex. 1995), we will analyze your question solely in terms of federal constitutional due-process requirements. Federal courts have determined that, at a minimum, due process requires "notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *See id.* at 930 (and cases cited therein). In the context of criminal law, procedural due process means, in general, a right to a fair trial. *See* 1 CHESTER J. ANTIEAU, MODERN CONSTITUTIONAL LAW § 5:113, at 394 (1969).

Violation of a defendant's right to counsel may constitute a denial of due process. *See Gideon v. Wainwright*, 372 U.S. 335, 342-45 (1963). The Sixth Amendment to the United States Constitution guarantees a defendant a right to counsel in certain circumstances. *See id.* at 339-40. The Fourteenth Amendment extends this guarantee, which the United States Supreme Court has characterized as "fundamental and essential to a fair trial," to defendants in actions by the states. *Id.* at 342; *see also Wood v. State*, 478 S.W.2d 513, 515 (Tex. Crim. App. 1972); *Ahmadi v. State*, 864 S.W.2d 776, 781 (Tex. App.–Fort Worth 1993, pet. ref'd). Additionally, the Texas Constitution provides a right to counsel to citizens charged with a crime. TEX. CONST. art. I, § 10; *see* TEX. CODE CRIM. PROC. ANN. art. 1.05 (Vernon 1977); *Phetvongkham v. State*, 841 S.W.2d 928, 931 (Tex. App.–Corpus Christi 1992, pet. ref'd, untimely filed). Nevertheless, the state constitutional guarantee does not provide any greater right than that accorded in the federal constitution. *Foster v. State*, 713 S.W.2d 789, 790 (Tex. App.–Houston [1st Dist.] 1986) (citing *Floyd v. State*, 710 S.W.2d 807 (Tex. App.–Fort Worth 1986, pet. dism'd), *aff'd* 787 S.W.2d 385 (Tex. Crim. App. 1990); *Narvaiz v. State*, 840 S.W.2d 415, 433 (Tex. Crim. App. 1992) (en banc) (citing *Gideon v. Wainwright*, 372 U.S. 335 (1963)), *cert. denied*, 507 U.S. 975 (1993).

An individual's right to counsel does not attach until the state begins an adversarial judicial proceeding against the individual. *Hidalgo v. State*, 983 S.W.2d 746, 752 (Tex. Crim. App. 1999); *McFarland v. State*, 928 S.W.2d 482, 507 (Tex. Crim. App. 1996) (en banc), *cert. denied*, 519 U.S. 1119 (1997); *see also Barley v. State*, 906 S.W.2d 27, 36 (Tex. Crim. App. 1995) (en banc), *cert. denied*, 516 U.S. 1176 (1996). "The Sixth Amendment right to counsel automatically becomes effective at the inception of adversary judicial criminal proceedings and must be implemented by the State at every critical stage of those proceedings, even absent a specific request, unless the accused intelligently and voluntarily yields his prerogative to the assistance of an attorney." *Fuller v. State*, 829 S.W.2d 191, 205 (Tex. Crim. App. 1992) (en banc), *cert. denied*, 508 U.S. 941 (1993). In general, no critical stage is reached until the state has filed formal charges against an individual. *Price v. State*, 870 S.W.2d 205, 207 (Tex. App.–Fort Worth), *aff'd*, 887 S.W.2d 949 (Tex. Crim. App. 1994) (en banc).

In our opinion, the polygraph examinations you describe do not implicate the examinee's Sixth Amendment right to counsel. If the subject of a polygraph examination discloses during the course of an examination that he or she committed a previously undiscovered incident of child abuse or neglect but charges on that incident have not yet been filed, the subject has no right to counsel with respect to this previously undisclosed criminal incident until prosecution on that incident is initiated. The examinee must be offered counsel only when judicial criminal proceedings based upon the previously undisclosed incident are initiated. We consequently conclude that the situation about which you ask does not as a matter of law implicate an examinee's due-process rights. Whether an examinee's due-process rights are violated in a particular situation is a question of fact that cannot be resolved in the opinion process. *See, e.g.*, Tex. Att'y Gen. Op. Nos. DM-98 (1992) at 3; H-56 (1973) at 3; M-187 (1968) at 3; O-2911 (1940) at 2. Moreover, you cite nothing that bars an examinee from having the assistance of counsel during a polygraph examination given as part of the examinee's sex-offender treatment process.

In your request letter to this office, you ask the following: "In pre-adjudicated cases: []Does due process outweigh Section 261 of the Texas Family Code if the polygraph test is run for an attorney and does the Texas Family Code, Section 261 outweigh The Texas Polygraph Examiners Act, Section 19A?" Request Letter, *supra*, at 4. As stated above, we believe that the Family Code's reporting requirement prevails over section 19A of the Polygraph Examiners Act. This is true for both pre- and post-adjudicated cases. With regard to the involvement of an attorney, we believe you are asking about the attorney-client privilege. The attorney-client privilege applies to the testimony of a polygraph examiner hired by an attorney for a client, if the examiner was employed as the attorney's agent to assist in rendering legal advice to the client. *See* 81 AM. JUR. 2D *Witnesses* § 424, at 378 (1992). While such a polygraph examiner cannot avoid the requirement to report, *see* TEX. FAM. CODE ANN. § 261.101(c) (Vernon Supp. 1999), section 261.202 of the Family Code allows a court to exclude evidence subject to the attorney-client privilege in a proceeding regarding the abuse or neglect of a child. *See id.* § 261.202 (Vernon 1996).

Although you have not asked specifically whether the polygraph examination implicates an examinee's Fifth Amendment rights against self-incrimination, we think it incumbent upon us to comment briefly on this subject. The Fifth Amendment to the United States Constitution, in relevant part, provides that no person "shall be compelled in any criminal case to be a witness against himself." U. S. CONST. amend. V. Article I, section 10 of the Texas Constitution provides similarly. *See* TEX. CONST. art. I, § 10. The provision in our state constitution affords no broader protection than that provided under the federal constitution. *McKenna v. State*, 671 S.W.2d 138, 139 (Tex. App.–Houston [1st Dist.] 1984, pet. ref'd); *Ex parte Shorthouse*, 640 S.W.2d 924, 928 (Tex. Crim. App. 1982) (en banc).

The privilege against self-incrimination not only permits a person to refuse to testify against him- or herself at a criminal trial in which he or she is a defendant, but also permits a person to refuse to answer official questions "put to him in any other proceeding, civil or criminal, formal or

informal, where the answers might incriminate him in future criminal proceedings." *Minnesota v. Murphy*, 465 U.S. 420, 426 (1984) (quoting *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973)). If, after invoking the privilege, a witness is compelled to testify against himself or herself, the witness's answers are inadmissible against that person in a later criminal prosecution. *Id.* A person does not lose this protection because he or she has been convicted of a crime, notwithstanding that a defendant is imprisoned or on probation at the time he or she makes the incriminating statements. If those statements are compelled, they are inadmissible in a subsequent trial for a crime other than that for which the defendant has been convicted. *Id.*

The United States Supreme Court has considered a probationer's statements to a probation officer in *Murphy*. In that case, a sex offender on probation was required to participate in sex-offender treatment, report to his probation officer as directed, and to be truthful with the probation officer in all matters. *Murphy*, 465 U.S. at 422. During the course of sex-offender treatment, the defendant revealed that he had committed a rape and murder several years earlier for which he had never been prosecuted. The treatment counselor conveyed this information to the probation officer, who then requested a meeting with the defendant. At the meeting, the probation officer asked the defendant about the prior rape and murder; the defendant admitted to the crimes. He was subsequently tried for the rape and murder. At his trial, he sought to suppress his statements to the probation officer, claiming they were obtained in violation of the Fifth and Fourteenth Amendments. *Id.* at 424-25.

The Supreme Court concluded that the Fifth Amendment privilege against self-incrimination was not violated and that the defendant's statements to his probation officer could be used in the prosecution of the rape and murder charges. *Id.* at 440. In doing so, the Court noted that the privilege is not self-executing. *Id.* at 427. That is, a witness who desires the protection of the privilege must claim it or they will not be considered to have been "compelled" to answer within the meaning of the Fifth Amendment. *Id.* (quoting *United States v. Monia*, 317 U.S. 424, 427 (1943)). In this case, although the probationer was under a general obligation to appear and answer questions, that general obligation did not render the probationer's voluntary statements compelled answers. *Id.* at 427.

The Court noted two exceptions to the general rule that the privilege is not self-executing, pertinent to the program you ask about. First, the Court stated, the privilege against self-incrimination need not be invoked by the witness when he or she is subject to custodial interrogation. *Id.* at 430. Miranda warnings extend to persons in custody to advise them of their constitutional rights. *See Miranda v. Arizona*, 384 U.S. 436 (1966). A Texas court has stated that a court-ordered polygraph examination to which a felon convicted of aggravated sexual assault must submit as a condition of probation is not a custodial interrogation. *Marcum v. State*, 983 S.W.2d 762, 766 (Tex. App.–Houston [14th Dist.] 1998, pet. ref'd); *see also Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996) (stating that person is in custody "only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a

formal arrest"). Consequently, *Marcum* suggests that Miranda warnings are not required before such a polygraph examination, but that question ultimately is one of federal law. *See Marcum*, 983 S.W.2d at 766; *see also* TEX. CODE CRIM. PROC. art. 38.22, §§ 2, 3 (Vernon 1979 & Supp. 1999) (requiring Miranda warnings prior to custodial interrogation); *Melton v. State*, 790 S.W.2d 322, 326 (Tex. Crim. App. 1990) (en banc) (stating that state must demonstrate that defendant knowingly and intelligently waived privilege against self-incrimination only if statement stems from custodial interrogation). *Marcum* further suggests that the Fifth Amendment privilege against self-incrimination is not self-executing in the circumstances about which you ask. *See Marcum*, 983 S.W.2d at 766; *see also Murphy*, 465 U.S. at 430 (stating that privilege against self-incrimination is self-executing only when witness is subject to custodial interrogation).

Second, the privilege need not be invoked when the state penalizes the assertion of the privilege so as to foreclose a free choice to remain silent, thereby compelling incriminating testimony. *Murphy*, 465 U.S. at 434 (quoting *Garner v. United States*, 424 U.S. 648, 661 (1976)). A threat to revoke probation if the probationer is untruthful generally is insufficient to give rise to a self-executing privilege against incrimination. *Id.* at 435. On the other hand, the Supreme Court expressly has cautioned that "if the state, either expressly or by implication, asserts that invocation of the privilege would lead to revocation of probation, it would have created the classic penalty situation, the failure to assert the privilege would be excused, and the probationer's answers would be deemed compelled and inadmissible in a criminal prosecution." *Id.* Accordingly, the state may "not constitutionally carry out a threat to revoke probation for the legitimate exercise of the Fifth Amendment privilege." *Id.* at 438.

Courts in Oregon and Florida have applied *Murphy* to a polygraph examination that a probationer is required to take as a condition of probation. *See Cassamassima v. State*, 657 So. 2d 906 (Fla. Dist. Ct. App. 1995) (en banc); *State v. Tenbusch*, 886 P.2d 1077 (Or. Ct. App. 1994), *cert. denied*, 516 U.S. 991 (1995). Although the probationer in the Oregon case was required to be honest about his sexual history, the court found that the condition did not "expressly nor implicitly foreclose his right to object to making self-incriminating statements." *Tenbusch*, 886 P.2d at 1082-83. In addition, the court believed that the requirement that the defendant submit to a polygraph examination as part of the treatment program, a requirement not present in *Murphy*, only emphasizes the requirement that the defendant be truthful; it does not affect the defendant's privilege against self-incrimination. *See Tenbusch*, 886 P.2d at 1082 n.6. Thus, the court concluded that the conditions of the defendant's probation do not on their face constitute a threat by the state to penalize the defendant for invoking his Fifth Amendment privilege. *Id.* at 1083.

The Florida court similarly acknowledged that a probationer who submits to a polygraph examination and who answers questions about sexual contact with children as part of a required treatment program has a right to invoke his privilege against self-incrimination. *See Cassamassima*, 657 So. 2d at 911. "Consistent with *Murphy*, the probationer may . . . refuse to answer [only] if it

is within his Fifth Amendment right to do so.  The state then may elect whether to require the answer by eliminating the threat of prosecution for the crime."  *Id.*

Although no Texas court has yet addressed the question of self-incrimination in the context of polygraph examinations ordered as a condition of probationary sex-offender treatment, we believe the cases just discussed are instructive.  In light of this authority, we believe that an examinee has a right to claim the privilege against self-incrimination during the course of a polygraph examination if the answer to the question posed may incriminate the examinee in a future criminal proceeding.  The state may not revoke the examinee's community supervision or parole as a consequence of the examinee's invoking the privilege.  *See Murphy*, 465 U.S. at 438.  If the state wishes to compel the examinee to answer a question after he or she has legitimately invoked the privilege with respect to that question, the state must provide some sort of immunity for the confession.  *See id.* at 429 (quoting *Maness v. Meyers*, 419 U.S. 449, 473 (1975) (White, J., concurring in the result)); *see also Cassamassima*, 657 So. 2d at 911.

## S U M M A R Y

Section 261.101 of the Family Code prevails over a conflicting statute, such as section 19A of the Polygraph Examiners Act, article 4413(29cc) of the Revised Civil Statutes, unless the legislature has explicitly indicated to the contrary. Because the legislature has not expressly excepted the information a polygraph examiner acquires during the course of a polygraph examination from the scope of section 261.101 of the Family Code, a polygraph examiner must report information indicating that a child has been or may have been abused or neglected in accordance with section 261.103 of the Family Code.

The examinee's local community supervision and corrections officer or parole officer is not an "agency designated by the court to be responsible for the protection of children" for purposes of section 261.103 of the Family Code, unless a court has specifically ordered otherwise.

A court probably would find that a polygraph examinee is not entitled to counsel during the course of a polygraph examination under section 261.101 of the Family Code and, consequently, that conducting the examination without counsel does not violate the examinee's due-process right. The attorney-client privilege applies to the testimony of a polygraph examiner hired by an attorney in certain circumstances.

An examinee may have a right to claim the privilege against self-incrimination during the course of a polygraph examination. If the state wishes to compel an examinee who has legitimately invoked the privilege to respond to the question, the state must determine whether to provide immunity for the confession.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Prepared by Kymberly K. Oltrogge
Assistant Attorney General